Filed 2/25/13  In re J.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J. S., a Person Coming Under the Juvenile Court Law. | C071188 |
| THE PEOPLE, | (Super. Ct. No. 68774) |
| Plaintiff and Respondent, | |
| v. | |
| J. S., | |
| Defendant and Appellant. | |

The minor's appeal is subject to the principles of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *People v. Kelly* (2006) 40 Cal.4th 106, 110.  In accordance with *Kelly*, we will provide a summary of the offenses and the proceedings in the trial court.

In July 2011 law enforcement responded to a security alarm at Hamilton Elementary School.  When they arrived, officers found a classroom window shattered and two people inside.  As the officers approached the classroom, J.S. fled, dropping a hammer and flashlight, and shoving one of the officers.  One of the officers ran after J.S.

1

and ordered him to stop; J.S. stopped and "took a fighting stance with the officer." The officer took out his Taser and ordered J.S. to the ground. J.S. complied. The officers inspected the classroom. The room was "ransacked," and there was graffiti spray-painted on the walls.

J.S. was detained and charged with second degree burglary (Pen. Code, § 459), vandalism (Pen. Code, § 594, subd. (b)(1)), possession of tools to commit vandalism (Pen. Code, § 594.2, subd. (a)), resisting a peace officer (Pen. Code, § 148, subd. (a)(1)), and possession of burglary tools (Pen. Code, § 466). J.S. later admitted the truth of the allegations and was granted deferred entry of judgment. (Welf. & Inst. Code, § 790.) J.S. was released into his mother's custody.

In February 2012 law enforcement conducted a traffic stop and found J.S. in a vehicle with four other people. The driver of the vehicle was driving on a suspended license; he told the officers that "his back passenger had a gun . . . ." Under the rear seat on the driver's side, where J.S. was sitting, the officers found a .357 Ruger, which previously had been reported stolen. The officers also found a bag containing ammunition for a .357-caliber gun, a .45-caliber gun, and ammunition referred to as ".62X39." J.S. was detained and taken to the Stockton Police Department. While at the police department, J.S. spit in a police officer's face.

J.S. was subsequently charged in a Welfare and Institutions Code section 602 petition with battery on a police officer. (Pen. Code, § 243, subd. (b).) J.S. admitted the truth of the allegation and the charge was added to his deferred entry of judgment. The People then withdrew a previously submitted statement of noncompliance with the deferred entry of judgment. J.S. was again released into his mother's custody.

In March 2012 law enforcement found a handgun in the basement of the home where J.S. lived with his mother. Officers also found a bullet inside the home. The gun matched a Ruger handgun previously reported stolen from J.S.'s brother, N.S. J.S., who was home at the time the gun and bullet were found, was detained and taken into custody.

2

A third Welfare and Institutions Code section 602 petition was then filed. The petition alleged J.S. possessed a firearm (Pen. Code, § 29610 [formerly Pen. Code, § 12101, subd. (a)] and ammunition (Pen. Code, § 29650 [formerly Pen. Code, §12101, subd. (b)], and was in receipt of stolen property (Pen. Code, § 496, subd. (a)). J.S. was detained and remained in custody pending the jurisdictional hearing. A deferred entry of judgment notice of noncompliance also was filed, alleging J.S. failed to obey all laws.

In May 2012 a contested disposition hearing was held. The court heard testimony from numerous witnesses, which collectively set out the following. Around the end of February 2012 J.S.'s older brother N.S. went to a gun store and picked out a .45-caliber, black and stainless steel Ruger handgun. N.S. took J.S. with him to the gun store. Ten days later, N.S. went back to pick up the gun; J.S. did not go with him. N.S., who lived on his own, took the gun to their mother's house, where J.S. was living. He may have left a bullet behind. Later in March 2012, N.S.'s home was burglarized. Among the items stolen from his home was the Ruger.

On the morning of March 27, 2012, J.S.'s mother, M.T., was awakened from sleep by a "pop, pop" noise. She got out of bed, saw that J.S. and his other brother were asleep in bed, then looked out of a window. M.T. saw a car driving toward the house and heard two or three more shots. M.T. went outside, where she encountered law enforcement officers. One of the officers pointed to a "broken area" in her car and asked if it was a bullet hole. M.T. had not seen it the night before.

City of Stockton Police Officer Shawn Sattler was one of the officers to respond to the report of shots fired. Sattler found an "unfired" bullet in the living room in "plain view." He then walked through the house to the back door, which he used to go into the backyard and around the side of the house to access the basement. Inside the basement, Sattler searched behind a low, cinderblock partition and found a "brand-new" looking backpack. Inside the backpack, Sattler found a loaded .45-caliber Ruger and two additional "magazines." He also found a shell casing in the street.

3

City of Stockton Police Officer Roger Williams also responded to the call of "shots fired," at the home of J.S. and M.T. He spoke with M.T. and showed her a bullet hole in the side of her car. There was no rust around the hole, and the paint surrounding the hole was "loose." Another officer brought to Williams the bullet found inside the house; M.T. said the bullet belonged to her older son, N.S. Williams then gathered the gun and ammunition from the basement and briefly set them on the sidewalk outside the house, then placed everything in the trunk of his patrol car.

City of Stockton Police Officer Chris Slate also responded to the call of shots fired. After J.S. was arrested and taken to the police station, Slate gave J.S. his *Miranda* rights, then interviewed him.[1] According to Slate, J.S. said he was getting ready for school when the shots were fired at the house. He said he heard three or four gunshots, then he "hit the floor." Slate told J.S. they had found a gun at the house. Slate described the gun to J.S. as "a black semi automatic like [Slate's] . . . 'but it had a silver topper, a silver slide.' "

With no further prompting from Slate, J.S. asked if the gun found was "[t]he Ruger." Slate acknowledged that it was. J.S. then told Slate his brother N.S. had recently purchased a Ruger; he thought that might be the gun Slate had found. J.S. also knew N.S. previously had reported the gun stolen. J.S. admitted to having seen the gun before, when N.S. bought it, but said he had not seen the gun since. Slate asked J.S. if he knew there was a gun in the house. J.S. said he thought there was a gun in the house, and he thought it was the gun belonging to N.S.

At the close of the People's case, J.S. moved pursuant to Welfare and Institutions Code section 701.1 to have the petition dismissed for lack of evidence. The trial court granted the motion and dismissed the petition. Pursuant to Welfare and Institutions Code

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

section 793, however, the trial court lifted the deferred entry of judgment, finding by a preponderance of the evidence that J.S. had violated the law. Specifically, the court found J.S. possessed a weapon, knowing that weapon was stolen. The court noted that although the evidence showing J.S. violated the law did not rise to the level of "beyond a reasonable doubt" required to sustain the petition, it did meet the "preponderance of the evidence" standard required for lifting the deferred entry of judgment. The matter was then set for disposition.

At disposition, the trial court ordered J.S. detained in juvenile hall for 120 days and awarded him 56 days of custody credit, which was later amended to 57 days. The court further ordered the maximum term of confinement based on the true findings in the original petition to be four years four months. J.S. was then advised of his probation requirements and his right to file an appeal.

We appointed counsel to represent the minor on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) The minor was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed, and we have received no communication from the minor.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to the minor.

## DISPOSITION

The judgment is affirmed.

                                                    RAYE           , P. J.

We concur:

      BLEASE           , J.

      NICHOLSON      , J.

5